IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| CHAUNCEY POPE, | * | |
| | * | |
| Plaintiff, | * | CIVIL ACTION FILE NO. |
| | * | |
| v. | * | |
| | * | |
| THE CITY OF ATLANTA, | * | |
| JAMES CUNNINGHAM (a/k/a | * | |
| Jason Cunningham), LI WONG, | * | |
| PAUL MERRITT and BRANDON | * | |
| HAMBERGER, | * | |
| | * | |
| Defendants. | * | |

## COMPLAINT FOR DAMAGES

COMES NOW the Plaintiff, Chauncey Pope, and hereby files this Complaint against Defendants as follows:

### INTRODUCTION

1.

This is a 42 U.S.C. §1983 action brought under the Fourth Amendment to the United States Constitution arising from the use of excessive force against him by the Defendant police officers. Plaintiff further contends that the violation of his federal constitutional rights was caused by defective customs or policies of Defendant City of

Atlanta, and that the city as well as the officers are liable for said federal constitutional violation.  Plaintiff has also asserted pendent state law claims of battery, negligence, and violation of the Georgia Constitution against the individual officers.

## JURISDICTION AND VENUE

2.

This action is brought pursuant to 42 U.S.C. §§1983 and 1988, as well as the Fourteenth Amendment of the United States Constitution.  Jurisdiction is founded upon 28 U.S.C. §1331, §1343, and the aforementioned constitutional and statutory provisions.  Plaintiffs further invoke the pendent or supplemental jurisdiction of this Court to decide claims arising under state law pursuant to 28 U.S.C. §1367.

3.

Venue is proper in this Court pursuant to 28 U.S.C. §1391(b) and N.D.L.R. 3.1B(3) because the event giving rise to this claim occurred in Fulton County, Georgia, which is situated within the district and divisional boundaries of the Atlanta Division of the Northern District of Georgia, and because one or more of the Defendants reside within said District and Division.

4.

All of the parties herein are subject to the jurisdiction of this Court.

## PARTIES

5.

 Plaintiff Chauncey Pope is a citizen of the United States and a resident of the state of Georgia.

6.

Defendant City of Atlanta is a duly organized and existing municipality under the laws of the state of Georgia with the capacity to sue and be sued, and which operates the Atlanta Police Department that employs the individual Defendants named herein.

7.

Defendant James Cunningham (also referred to in police reports as Jason Cunningham) is an individual who was, at all times relevant herein, a police officer employed by Defendant City of Atlanta who acted within the scope of his employment by and pursuant to the policies and procedures of the Atlanta Police Department.

8.

Defendant Li Wong is an individual who was, at all times relevant herein, a police officer employed by Defendant City of Atlanta who acted within the scope of his employment by and pursuant to the policies and procedures of the Atlanta Police

Department.

9.

Defendant Paul Merritt is an individual who was, at all times relevant herein, a police officer employed by Defendant City of Atlanta who acted within the scope of his employment by and pursuant to the policies and procedures of the Atlanta Police Department.

10.

Defendant Brandon Hamberger is an individual who was, at all times relevant herein, a police officer employed by Defendant City of Atlanta who acted within the scope of his employment by and pursuant to the policies and procedures of the Atlanta Police Department.

11.

At all times relevant herein, the above named Defendants acted under color of state law.

**FACTUAL ALLEGATIONS**

12.

On June 15, 2011, Plaintiff Chauncey Pope was visiting a house at 551 Sunset Avenue NW in Atlanta, Georgia when Defendants and other police officers arrived to execute a search warrant.

13.

The warrant being executed, which was ultimately determined by a court to be invalid, had been requested by the Peachtree City police as part of an investigation of break-ins in that city, and the purpose of the search was to look for stolen property or evidence that might connect that house and its occupants to the Peachtree City crimes.

14.

When the police arrived at the house at approximately noon, Pope and his friend Sean were upstairs on the computer when they heard a loud noise downstairs and then his friend Antonio saying "don't shoot me, don't shoot me."

15.

Pope did not hear anyone say "police" or "search warrant," and because they did not know what was happening, he and Sean hid in an attic crawl space.

16.

Defendants Cunningham, Wong, Merritt and Hamberger were members of the Atlanta Police Department's SWAT team who were there to assist with the execution of the warrant.

17.

Said Defendants went upstairs while other officers searched the first floor, and when they realized that someone was hiding in the attic crawl space, the Defendant

officers put tear gas into the attic in an attempt to flush out them out.

18.

When Pope did not come out of the crawl space, Defendants shouted "come on motherfucker" and "show me your hands."

19.

One of the officers, believed to be Defendant Cunningham, located Pope in the crawl space and handcuffed him while he was face down on the floor.

20.

Once Pope was handcuffed, said officer struck Pope in the left eye and put the eye out.

21.

Defendant Cunningham admits that he struck Pope in the face with his fist, but Pope believes that he was struck with the butt of a gun or a similarly hard object.

22.

There was no justification for Cunningham or any other Defendant officer to strike Pope in the face with a fist or weapon of any kind.

23.

The other Defendants then kicked Pope in the back of the head, dragged him across the floor by his dreadlocks, and threw him down the stairs.

24.

There was no justification for any of the Defendants to strike or kick Pope, to drag him by his hair, to throw him down the stairs, or to otherwise use force against him in the course of executing a search warrant at a house he was visiting.

25.

Once it became apparent that Pope's eye had been injured, one or more officers on the scene administered first aid and called an ambulance.

26.

Pope told the paramedics, as well as the doctors at the hospital where he was transported, that an officer had struck him in the eye with a gun; however, a subsequent internal affairs memo was written in a way that implies Pope never told medical personnel that he had been struck by an officer's gun.

27.

The same internal affairs memo, which concluded that none of the officers on the scene had violated departmental policy, stated that "there is no doubt Mr. Pope sustained a laceration to his eye during the execution of this search warrant, but there is insufficient evidence to determine how the injuries actually occurred" without acknowledging that it could have occurred when Cunningham admittedly "struck him with his fist in an unknown area of his face."

28.

According to the internal affairs memo, Defendant Cunningham struck Pope in the face "due to his gas mask being knocked off by Mr. Pope who was failing to comply with commands," but there is no discussion in the memo about whether alleged noncompliance with commands is justification for a blow to the head and in fact there was no such justification.

29.

Rather than addressing the obvious question of whether there was justification to strike Pope in the head, the internal affairs memo only focused upon whether there was any support for Pope's contention that an officer had struck him with the butt of a gun. Finding that there was no corroborating evidence (other than the damage to Pope's eyeball) of Pope having been struck by a gun, the memo summarily concluded that excessive force had not been used.

30.

In concluding that excessive force had not been used against Pope, the internal affairs memo also uncritically relied upon the statements of Defendant officers that they had dragged Pope by his shirt rather than his hair and that he had fallen down the stairs rather than being pushed – the same officers who also claimed they saw no injury to Pope's eye.

31.

The internal affairs memo did not address inconsistencies in the Defendant officers' stories about whether Cunningham had his pistol drawn, whether he gave his assault rifle to another officer before going "hands on" with Pope, and whether officers were aware of an injury to his eye when someone bandaged his eye before the paramedics arrived, and the memo also omitted any reference to statements by the paramedics or contained in the ambulance and hospital records.

32.

The internal affairs memo also did not question whether the invalid search warrant was properly executed in view of the fact that the police did not announce their presence either before or during entry as required by law.

33.

The purpose of the internal affairs memo was not objectively review the circumstances of the incident and make an honest assessment of the propriety of the officers' actions, but was instead to defend and justify the actions of the Defendant SWAT officers once it became obvious that they had caused Pope's injury.

34.

The conclusion of the internal affairs memo that no policies were violated by any officers was tantamount to an official determination by the Atlanta Police

Department that the Defendant officers had acted pursuant to departmental policy.

35.

While the department's post-incident determination that the Defendant officers acted pursuant to policy could not have retroactively caused the officers to act the way they did, the internal affairs memo and the department's determination that no policy was violated nonetheless constitute evidence of what the city's policy was at the time of the incident.

36.

The internal affairs memo and the department's official response to this incident is evidence of the City of Atlanta's custom or policy of turning a blind eye to misconduct by its police officers, and particularly the use of excessive force or other Fourth Amendment violations by the department's SWAT team in carrying out so-called high risk assignments such as executing search or arrest warrants, and it can be inferred from the City's response to the incident that such a custom or policy was in existence at the time of the subject incident and that the Defendant officers acted in accordance with that custom or policy.

37.

It can be inferred from the conduct of the Defendant officers and the department's official response to that conduct that the City of Atlanta condones the

use of excessive force and other Fourth Amendment violations by SWAT team members in executing what are expected to be high-risk warrants, and SWAT team members such as the Defendant Officers know that they will not be disciplined if they use excessive force or otherwise violate Fourth Amendment rights.

38.

It can be inferred from the conduct of the Defendant officers and the department's official response to that conduct that the City of Atlanta condones overly aggressive policing – even at the expense of violating constitutional rights – by SWAT team members and other officers involved in high-risk law enforcement activity, with the result being that the officers involved in such activity have come to believe that they have unlimited discretion to act aggressively an abusively toward subjects without any significant risk of disciplinary action, thereby leading officers – including the Defendant officers involved in this case – to believe that the City will stand behind them if they use excessive force, abuse their authority, or otherwise violate constitutional rights and thus causing such officers to violate constitutional rights of citizens, including Chauncey Pope.

39.

At all times relevant herein, Defendants Cunningham, Wong, Merritt and Hamberger acted pursuant to official custom and policy of Defendant City of Atlanta

when they used excessive force against Plaintiff Chauncey Pope and violated his Fourth Amendment rights.

40.

At all times relevant herein, Defendant City of Atlanta maintained defective customs and policies under which Defendants Cunningham, Wong, Merritt, Hamberger and other officers received deficient oversight and training in the execution of warrants and use of force that did not adequately address the protection of Fourth Amendment rights in high-risk situations where SWAT officers are involved.

41.

Said deficiencies in oversight and training were a policy defect that was a contributing cause of the violation of Plaintiff Pope's rights by Defendants Cunningham, Wong, Merritt and Hamberger.

**THEORIES OF RECOVERY**

**Fourth Amendment Claim Under Section 1983**

42.

The aforementioned misconduct of Defendants Cunningham, Wong, Merritt and Hamberger toward Pope constituted an unreasonable search and seizure and an unlawful use of excessive force in violation of the Fourth Amendment of the United

States Constitution.

43.

The law was clearly established in June 2011 that police officers should not enter a home to execute a search warrant without announcing their presence and purpose either before entry or, in the case of a no-knock warrant, during entry.

44.

The law was clearly established in June 2011 that a police officer should not use force against an unarmed and nonviolent person during the execution of a search warrant or other encounter between police and a free citizen at liberty, and in any event the force used must be reasonable in view of the threat posed by the citizen.

45.

The law was clearly established in June 2011 that a police officer should not use gratuitous and unnecessary force against a suspect who is already subdued or restrained.

46.

The law was clearly established in June 2011 that a police officer should not strike a suspect in the head, which has the capacity to cause death or serious bodily harm such as the loss of an eye, unless the suspect poses an imminent threat to human life.

47.

Defendants Cunningham, Wong, Merritt and Hamberger are not entitled to qualified immunity because they violated one or more principles of clearly established law under the Fourth Amendment.

48.

Accordingly, Defendants Cunningham, Wong, Merritt and Hamberger are liable under 42 U.S.C. §1983 for violating Plaintiff Pope's Fourth Amendment rights.

## Municipal Liability Claim Under Section 1983

49.

The aforementioned defective customs and policies of Defendant City of Atlanta were a moving force behind the unconstitutional conduct of Defendants Cunningham, Wong, Merritt and Hamberger, and accordingly, the city is liable for the violation of Plaintiff Pope's federal constitutional rights by said Defendant officers.

50.

Alternatively, Defendant City of Atlanta's failure to provide meaningful oversight and training in an area of law enforcement in which the need for training and oversight was obvious can be construed as deliberate indifference, and because said deliberate indifference to an obvious need was a moving force behind the conduct of the Defendant officers, the city is liable for the violation of Plaintiff Pope's federal

constitutional rights by said officers.

51.

Said defective policies and failure to provide oversight and training include the following systemic deficiencies as well as the customs and policies that have already pled in greater detail elsewhere herein:

- Failure to provide effective training and oversight in the proper methods of executing a search warrant and clearing a house being searched without violating the Fourth Amendment rights of the occupants.

- Failure to address the proper use of force in training segments that deal with arrest techniques, defensive tactics, and "hands on" encounters between officers and suspects in which the use of force is apt to occur – and not just in the context of abstract use of force principles taught in the classroom or on the firing range.

- Failure to view overly aggressive police activity such as the use of gratuitous and unnecessary force, particularly by SWAT team members on what are perceived to be high-risk assignments, as a serious matter for which officers should be subject to serious disciplinary action.

- Failure to diligently and objectively investigate and evaluate the alleged use of excessive force and abuse by officers rather than focusing on justifying and covering up such incidents.

52.

The aforementioned deficiencies in oversight and training, as well as the other customs and policies of Defendant City of Atlanta pled elsewhere herein, caused Plaintiff Pope to be subjected to an unreasonable search and seizure and to the repeated use of excessive force against him by multiple police officers in violation of his federal constitutional rights, for which the city is liable under 42 U.S.C. §1983.

**Pendent State Tort Claims**

53.

The aforementioned conduct of Defendants Cunningham, Wong, Merritt and Hamberger also constitute battery and/or negligence under Title 51 of the Official Code of Georgia Annotated, as well as abuse during the course of an arrest in violation of Art. I, Sec. I, Par. 17 of the Georgia Constitution.

54.

Because said Defendant officers acted with actual malice, and with specific intent to injure or commit a wrongful act, they are not entitled to official immunity under Georgia law.

55.

Alternatively, said Defendant officers are not entitled to official immunity under Georgia law to the extent they acted outside the scope of their permissible authority

and were thus engaged in negligent or tortious conduct in the performance of a ministerial duty.

56.

Accordingly, Defendants Cunningham, Wong, Merritt and Hamberger are liable to Plaintiff Pope for battery, negligence, and/or abuse in violation of the Georgia Constitution.

**DAMAGES**

57.

As a direct and proximate result of the above described conduct of Defendants, Plaintiff Chauncy Pope has been deprived of his constitutional rights, has been subjected to extreme physical and mental pain and suffering, and has been forced to incur substantial medical expenses, which is expected to continue into the future.

58.

Defendants are liable to Plaintiff for all of the foregoing injuries and damages in an amount to be proven at trial and determined by the enlightened conscience of fair and impartial jurors.

59.

The aforementioned conduct of Defendants Cunningham, Wong, Merritt and Hamberger amounted to such conscious indifference and reckless disregard for the

consequences as to also authorize the imposition of punitive damages against said Defendant officers.

60.

Plaintiff is entitled to recover reasonable attorney's fees and expenses of litigation from Defendants.

**WHEREFORE**, Plaintiff demands the following:

a)      That this action be tried by a jury;

b)      That judgment be entered in favor of Plaintiff and against Defendants in an amount to be determined by the enlightened conscience of fair and impartial jurors to the extent allowed by law;

c)      That Plaintiff be awarded reasonable attorney's fees and expenses;

d)      That all costs of this action be taxed against Defendants; and

e)      That the Court award any additional or alternative relief as may be deemed appropriate under the circumstances.

Respectfully submitted this 3rd day of June, 2013.

/s/ Craig T. Jones
CRAIG T. JONES
Ga. Bar No. 399476
Attorney for Plaintiff

PAGE PERRY, LLC
1040 Crown Pointe Parkway, Suite 1050
Atlanta, GA  30338
(770) 673-0047      cjones@pageperry.com