## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| **CHAUNCEY POPE,** | * | |
| | * | |
| **Plaintiff,** | * | **CIVIL ACTION FILE NO.** |
| | * | **1:13-CV-01848-JOF** |
| **v.** | * | |
| | * | |
| **THE CITY OF ATLANTA,** | * | |
| **JAMES CUNNINGHAM (a/k/a** | * | |
| **Jason Cunningham), LI WONG,** | * | |
| **PAUL MERRITT and BRANDON** | * | |
| **HAMBERGER,** | * | |
| | * | |
| **Defendants.** | * | |

### PLAINTIFF'S BRIEF IN OPPOSITION TO DEFENDANT
### CITY OF ATLANTA'S MOTION TO DISMISS

COMES NOW the Plaintiff, Chauncey Pope, and hereby files this brief in opposition to the City of Atlanta's motion to dismiss as follows:

### SUMMARY OF ARGUMENT

The City has misconstrued Plaintiff's *Monell* claim.  Plaintiff is not alleging that the City's post-incident ratification of an incident was somehow the moving force of the incident.  Rather, Plaintiff has simply alleged that the City maintained a custom or policy of encouraging the use of excessive force and other constitutional abuses by SWAT team members, and that the Defendant SWAT officers in this case acted

pursuant to that custom or policy.  The existence of such a custom or policy – and the officers' adherence to it – can be inferred from the fact that the City's investigation found nothing wrong with conduct that caused an unarmed man to be struck in the face with sufficient force to cause him to lose an eye.  Plaintiff has also alleged specific systemic deficiencies in oversight and training resulting from deliberate indifference on the part of the City – and that said deficiencies were a moving force behind the violation of Plaintiff's rights – but the City's motion ignores those allegations.

The inference that can be drawn from the City's response to this incident is not the sole basis for the *Monell* claim. Other evidence necessary to prove the City's liability is largely in the custody and control of the City, which seeks to shut down the Plaintiff's claim without giving him an opportunity to prove his allegations.  Plaintiff has sufficiently pled a *Monell* claim against the City, and he should be permitted to conduct discovery in order to ascertain the facts necessary to support that claim.

## **RELEVANT FACTS**

Plaintiff Chauncey Pope was seriously injured by the Defendant police officers during the execution of a search warrant at a residence he was visiting.  He alleges that he was subjected to the use of excessive force in violation of the Fourth Amendment, and that the City of Atlanta is liable under *Monell v. Department of*

*Social Servs.*, 436 U.S. 658 (1978) because the officers acted pursuant to city policy. This motion to dismiss does not address the underlying constitutional claim against the officers, only the *Monell* claim against the City.

Plaintiff's *Monell* allegations against the City of Atlanta fall into two general categories:  1) allegations of specific policy deficiencies that were the moving force behind the violation of Plaintiff's rights; and 2) allegations that the City's failure to discipline the involved officers authorizes an evidentiary inference that the officers were acting pursuant to City policy when they violated Plaintiff's rights, which can be relied upon to show what the policy was and to show that it was a moving force behind the officers' conduct.  The City's motion deals only with the second category of allegations – mischaracterizing it as an improper attempt to base *Monell* causation upon post-incident ratification – and ignores the first category altogether.

Here are the paragraphs of the Complaint that constitute the first category of *Monell* allegations:

> 39.
> At all times relevant herein, Defendants Cunningham, Wong, Merritt and Hamberger acted pursuant to official custom and policy of Defendant City of Atlanta when they used excessive force against Plaintiff Chauncey Pope and violated his Fourth Amendment rights.

> 40.
> At all times relevant herein, Defendant City of Atlanta maintained defective customs and policies under which Defendants Cunningham, Wong, Merritt, Hamberger and other officers received deficient

oversight and training in the execution of warrants and use of force that did not adequately address the protection of Fourth Amendment rights in high-risk situations where SWAT officers are involved.

41.

Said deficiencies in oversight and training were a policy defect that was a contributing cause of the violation of Plaintiff Pope's rights by Defendants Cunningham, Wong, Merritt and Hamberger.

49.

The aforementioned defective customs and policies of Defendant City of Atlanta were a moving force behind the unconstitutional conduct of Defendants Cunningham, Wong, Merritt and Hamberger, and accordingly, the city is liable for the violation of Plaintiff Pope's federal constitutional rights by said Defendant officers.

50.

Alternatively, Defendant City of Atlanta's failure to provide meaningful oversight and training in an area of law enforcement in which the need for training and oversight was obvious can be construed as deliberate indifference, and because said deliberate indifference to an obvious need was a moving force behind the conduct of the Defendant officers, the city is liable for the violation of Plaintiff Pope's federal constitutional rights by said officers.

51.

Said defective policies and failure to provide oversight and training include the following systemic deficiencies as well as the customs and policies that have already pled in greater detail elsewhere herein:

- Failure to provide effective training and oversight in the proper methods of executing a search warrant and clearing a house being searched without violating the Fourth Amendment rights of the occupants.
- Failure to address the proper use of force in training segments that deal with arrest techniques, defensive tactics, and "hands on" encounters between officers and suspects in which the use of force is apt to occur – and not just in the context of abstract use of force principles taught in the classroom or on the firing range.

4

- Failure to view overly aggressive police activity such as the use of gratuitous and unnecessary force, particularly by SWAT team members on what are perceived to be high-risk assignments, as a serious matter for which officers should be subject to serious disciplinary action.
- Failure to diligently and objectively investigate and evaluate the alleged use of excessive force and abuse by officers rather than focusing on justifying and covering up such incidents.

52.

      The aforementioned deficiencies in oversight and training, as well as the other customs and policies of Defendant City of Atlanta pled elsewhere herein, caused Plaintiff Pope to be subjected to an unreasonable search and seizure and to the repeated use of excessive force against him by multiple police officers in violation of his federal constitutional rights, for which the city is liable under 42 U.S.C. §1983.

(Doc. 1, ¶¶39-41, 49-52).

      The second category of *Monell* allegations provides evidentiary support for the existence of a custom or policy of tolerating – and therefore encouraging – the use of excessive force by SWAT officers like those involved in this case:

34.

      The conclusion of the internal affairs memo that no policies were violated by any officers was tantamount to an official determination by the Atlanta Police Department that the Defendant officers had acted pursuant to departmental policy.

35.

      While the department's post-incident determination that the Defendant officers acted pursuant to policy could not have retroactively caused the officers to act the way they did, the internal affairs memo and the department's determination that no policy was violated nonetheless constitute evidence of what the city's policy was at the time of the incident.

36.

      The internal affairs memo and the department's official response

to this incident is evidence of the City of Atlanta's custom or policy of turning a blind eye to misconduct by its police officers, and particularly the use of excessive force or other Fourth Amendment violations by the department's SWAT team in carrying out so-called high risk assignments such as executing search or arrest warrants, and it can be inferred from the City's response to the incident that such a custom or policy was in existence at the time of the subject incident and that the Defendant officers acted in accordance with that custom or policy.

37.

It can be inferred from the conduct of the Defendant officers and the department's official response to that conduct that the City of Atlanta condones the use of excessive force and other Fourth Amendment violations by SWAT team members in executing what are expected to be high-risk warrants, and SWAT team members such as the Defendant Officers know that they will not be disciplined if they use excessive force or otherwise violate Fourth Amendment rights.

38.

It can be inferred from the conduct of the Defendant officers and the department's official response to that conduct that the City of Atlanta condones overly aggressive policing – even at the expense of violating constitutional rights – by SWAT team members and other officers involved in high-risk law enforcement activity, with the result being that the officers involved in such activity have come to believe that they have unlimited discretion to act aggressively an abusively toward subjects without any significant risk of disciplinary action, thereby leading officers – including the Defendant officers involved in this case – to believe that the City will stand behind them if they use excessive force, abuse their authority, or otherwise violate constitutional rights and thus causing such officers to violate constitutional rights of citizens, including Chauncey Pope.

(Doc. 1, ¶¶34-38).

Plaintiff respectfully submits that the foregoing excerpts from the Complaint, viewed in the context of the Complaint as a whole, sufficiently allege a plausible

*Monell* claim against the City of Atlanta for the reasons set forth below.

## LEGAL ARGUMENT

**A.    Plaintiff must only allege a plausible claim to survive a motion to dismiss**

As the Supreme Court has noted, "Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007), *quoting Conley v. Gibson*, 355 U.S. 41, 47 (1957). "[F]or the purposes of a motion to dismiss [a court] must take all of the factual allegations in the Complaint as true." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950 (2009).

To survive a motion to dismiss, a Complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." 550 U.S. at 570.  A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  *Id*. at 556.  The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. *Iqbal*, 129 S. Ct. at 1949.  "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id*. at 1950.  However, "a well-pleaded

Complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." *Twombly*, 550 U.S. at 557 (internal quotation marks omitted).  Plaintiff is only required to plead "enough factual content to nudge his claims across the line from conceivable to plausible." *Speaker v. U.S. Dept. of Health & Human Services Centers for Disease Control & Prevention*, 623 F.3d 1371, 1384-86 (11th Cir. 2010) (quoting *Twombly,* 550 U.S. at 555, 570) (reversing dismissal of Privacy Act claim because plaintiff's "allegations are not barren recitals of the statutory elements, shorn of factual specificity").

In evaluating the sufficiency of the pleadings post-*Iqbal*, the Court is required to construe the Complaint in the light most favorable to Plaintiffs.  *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1288 (11th Cir. 2010).  The "Complaint should be read as a whole, not parsed piece by piece to determine whether each allegation, in isolation, is plausible."  *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009).   The allegations need not "compel" an inference of liability, but need only "allow a reasonable factfinder to draw [that] inference."  *Waters Edge Living, LLC v. RSUI Indem. Co.*, 355 Fed. Appx. 318, 323 (11th Cir. 2009).

**B.    Plaintiff has plausibly alleged a *Monell* claim against the City of Atlanta**

*1.    It is undisputed that Plaintiff has pled a Fourth Amendment violation*

The City's motion does not dispute that Plaintiff has properly alleged a 42

U.S.C. §1983 claim against the individual Defendant police officers for using excessive force against him.  Claims of excessive force in the course of an arrest, investigatory stop, or other seizure are evaluated under the reasonableness standard of the Fourth Amendment based upon the totality of the circumstances. *Graham v. Connor*, 490 U.S. 386 (1989).  While the City corrects points out that there can be no municipal liability in the absence of an underlying constitutional violation, Plaintiff has clearly alleged that he was subjected to the use of unreasonable force without justification under *Graham*.  (Doc. 1, ¶¶20-24, 42-48).  For purposes of this motion, the issue in dispute is whether Plaintiff has plausibly alleged facts under which the City of Atlanta can be subject to municipal liability under Section 1983 for the unconstitutional conduct of its officers.

2.    *Plaintiff has pled a Monell claim with reasonable particularity*

In *Monell v. Department of Social Servs.*, 436 U.S. 658 (1978), the Supreme Court established that local governmental entities can be held liable under §1983 for violating an individual's constitutional rights. *Id.* at 690.  To establish municipal liability under *Monell*, a plaintiff must show 1) the existence of a municipal policy or custom, and 2) that there is a causal link between the policy or custom and an alleged constitutional deprivation. *City of Canton v. Harris*, 489 U.S. 378, 385 (1989).  It is not necessary that the policy or custom be unconstitutional on its face, only that it be

the moving force behind the constitutional violation at issue. *Id.*

Plaintiff has clearly alleged deficiencies in City policy and that the Defendant officers acted pursuant to such policy.   (Doc. 1, ¶¶34-41, 49-52).   Such policy deficiencies include:

- Failure to provide effective training and oversight in the proper methods of executing a search warrant and clearing a house being searched without violating the Fourth Amendment rights of the occupants.
- Failure to address the proper use of force in training segments that deal with arrest techniques, defensive tactics, and "hands on" encounters between officers and suspects in which the use of force is apt to occur – and not just in the context of abstract use of force principles taught in the classroom or on the firing range.
- Failure to view overly aggressive police activity such as the use of gratuitous and unnecessary force, particularly by SWAT team members on what are perceived to be high-risk assignments, as a serious matter for which officers should be subject to serious disciplinary action.
- Failure to diligently and objectively investigate and evaluate the alleged use of excessive force and abuse by officers rather than focusing on justifying and covering up such incidents.

 (Doc. 1, ¶51).  Despite the City's assertion to the contrary, Plaintiff also alleges that aforementioned failure to provide training and oversight was due to deliberate indifference on the party of the City, and that said failure to train and oversee was a moving force behind the violation of Plaintiff's rights. (Doc. 1, ¶¶50-52).

In *City of Canton v. Harris*, the Supreme Court specifically addressed failure to train claims as follows:

...The inadequacy of police training may serve as the basis for Section 1983 liability only where the failure to train amounts to **deliberate indifference to the rights of persons with whom the police come into contact**.... [I]t may happen that in light of the duties assigned to specific officers or employees the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need. **In that event, the failure to provide proper training may fairly be said to represent a policy for which the city is responsible, and for which the city may be held liable if it actually causes injury**.

*Id.* at 388-390 (emphasis added). In a now famous footnote, the Court clarified its holding as follows:

For example, city policymakers know to a moral certainty that their police officers will be required to arrest fleeing felons. The city has armed its officers with firearms, in part to allow them to accomplish this task. Thus, **the need to train officers in the constitutional limitations on the use of deadly force**, *see Tennessee v. Garner, 471 U.S. 1, 105 S. Ct. 1694, 85 L. Ed.2d 1 (1985),* **can be said to be "so obvious," that failure to do so could properly be characterized as "deliberate indifference" to constitutional rights.** It could also be that the police, in exercising their discretion, so often violate constitutional rights that the need for further training must have been plainly obvious to the city policymakers, who, nevertheless, are "deliberately indifferent" to the need.

*Id.*, fn. 10. Similarly, Plaintiff in the instant case is alleging a "failure to do so properly" that "could properly be characterized as deliberate indifference to constitutional rights." *Id.* At the pleadings stage, this is clearly sufficient.

There are two methods to establish a failure to train under *City of Canton*: 1) by establishing a pattern of incidents that demonstrates the need for more or better

training; or 2) by failing to give training in areas where there is an obvious need for training, in which case it is not necessary to establish a pattern. *Id.* "One of the ways a plaintiff may demonstrate a county's deliberate indifference is by showing that the need for a particular type of training is obvious, **even without prior incidents to place the municipality on notice**." *Harris v. Coweta County*, Case No. 3:01CV148WBH, 2003 WL 25419527 at *8-10 (N.D. Ga. 9/25/03), *affirmed in part, reversed in part*, 406 F.3d 1307, *vacated and superseded by* 433 F.3d 807 (11th Cir. 2005), *reversed on other grounds, Scott v. Harris*, 550 U.S. 372 (2007) (trial court found genuine issues of material fact supporting *Monell* liability for failure to train, which was not addressed on interlocutory appeal of denial of qualified immunity) (citing *Young v. City of Augusta, Ga.,* 59 F.3d 1160, 1172 (11th Cir.1995)) (emphasis added).  Accordingly, it is not necessary for Plaintiff to plead – or ultimately prove – a pattern of prior incidents, although discovery may reveal the existence of such a pattern once this case is allowed to proceed.

The "obvious need" language of *City of Canton* was recently revisted – and affirmed – by the Supreme Court in *Connick v. Thompson*, 131 S. Ct. 1350, 1360, 179 L. Ed. 2d 417 (2011).  In *Connick*, the Court made clear that the municipality's knowledge of an "obvious need" for training can be actual or constructive – meaning it can be on notice based on what it should have known rather than what it knew or

claims to have known.   "Thus, when city policymakers are on actual or constructive

notice that a particular omission in their training program causes city employees to

violate citizens' constitutional rights, the city may be deemed deliberately indifferent

if the policymakers choose to retain that program."  *Id.* at 407, 117 S.Ct. 1382.  The

alleged training deficiency in *Connick* was the failure to train prosecutors in their duty

to turn over exculpatory *Brady* material to criminal defendants, and the Court

distinguished that fact pattern while reinforcing the applicability of *City of Canton* to

police officers as follows:

> In *Canton,* the Court left open the possibility that, "in a narrow range of
> circumstances," **a pattern of similar violations might not be necessary
> to show deliberate indifference**. *Bryan Cty., supra,* at 409, 117 S. Ct.
> 1382. The Court posed the hypothetical example of a city that arms its
> police force with firearms and deploys the armed officers into the public
> to capture fleeing felons without training the officers in the constitutional
> limitation on the use of deadly force. *Canton, supra,* at 390, n. 10, 109
> S.Ct. 1197. Given the known frequency with which police attempt to
> arrest fleeing felons and the "predictability that an officer lacking
> specific tools to handle that situation will violate citizens' rights," the
> Court theorized that a city's decision not to train the officers about
> constitutional limits on the use of deadly force could reflect the city's
> deliberate indifference to the "highly predictable consequence," namely,
> violations of constitutional rights. *Bryan Cty., supra,* at 409, 117 S.Ct.
> 1382. **The Court sought not to foreclose the possibility, however
> rare, that the unconstitutional consequences of failing to train could
> be so patently obvious that a city could be liable under § 1983
> without proof of a pre-existing pattern of violations.**
>
> Failure to train prosecutors in their *Brady* obligations does not fall within
> the narrow range of *Canton***'s hypothesized single-incident liability**.

131 S. Ct. at 1361, 179 L. Ed. 2d 417  (emphasis added).  Notably, the highlighted language makes clear that *City of Canton* permits *Monell* liability based on a single unconstitutional incident where the need for training police officers is sufficiently obvious that the failure to train can be construed as deliberate indifference.

Municipal liability claims under Section 1983 are governed by the notice pleading standard of Rule 8, and, as the Supreme Court has held, are not subject to a "heightened pleading standard."  *Leatherman v. Tarrant Cty. Narcotics Intel. & Coord. Unit*, 507 U.S. 163, 168 (1993).  Consistent with *Leatherman*, Plaintiff's Complaint has put the City on notice as to the nature of his municipal liability claims, which include both affirmative allegations of the existence of defective policy as well allegations of the City's failure to train and oversee. The Complaint also satisfies the plausibility standard of *Twombly* and *Iqbal*.   *See, generally, Padilla v. City of Chicago*, 2011 WL 3793413 at *5-6 (N.D. Ill. 8/24/2011) (citing *Fuery v. City of Chicago*, 2009 WL 1270201 at *5 (N.D. Ill. 5/6/2009) and *Young v. City of Romeoville*, 2011 WL 1575512 at *3 (N.D. Ill. Apr. 4/27/2011)) (discussing notice pleading requirement for *Monell* claims and concluding that plaintiff's boilerplate allegation of "widespread abuse" was "sufficient factual evidence for one to infer the existence of one or more widespread policies or practices maintained with deliberate indifference by the City"); *Devarnne v. City of Schenectay*, 2011 WL 219722 at *3

(N.D.N.Y. 1/21/2011) ("it may reasonably and plausibly be inferred from the nature of the alleged constitutional violations that Plaintiff's injuries were caused by a municipal custom or policy (including the failure to adequately train or deliberate indifference to constitutional rights)"); *Kimbrough v. Town of Dewitt Police Dept.*, 2010 WL 3724121 at *10 (N.D.N.Y. 3/8/2010) (citing *Leatherman*, 507 U.S. at 164) (ruling that despite lack of detail, plaintiff's excessive force allegations gave rise to a "facially plausible" failure to train claim and stating that "it is hard to fathom how a plaintiff could provide more detail at the pleading stage regarding a *Monell* claim based on failure to train").

### 3.    *Plaintiff has alleged supporting facts as evidence of the City's policy*

In addition to the Plaintiff's allegations of specific policy deficiencies, Plaintiff has also pled specific facts from which it can be inferred – based on the City's official investigatory and disciplinary response to the incident – that the Defendant officers acted pursuant to policy when they violated Plaintiff's rights.  (Doc. 1, ¶¶34-38). Subsequent conduct by a municipal policymaker may be used to prove preexisting disposition and policy. *Sherrod v. Berry*, 827 F.2d 195, 205 (7th Cir. 1987), *vacated on other grounds*, 835 F.2d 1222 (1988).  Citing *Grandstaff v. City of Borger*, 767 F.2d 161, 171 (5th Cir. 1985), *cert. denied*, 480 U.S. 916 (1987), the *Sherrod* court acknowledged the difficulties a Section 1983 plaintiff is likely to encounter in

attempting to prove the existence of an official municipal custom or policy at the time of her injury, and ruled that subsequent conduct – in that case two other lawsuits against city officers, including one for an incident that postdated the plaintiff's incident – could be used to prove preexisting disposition and policy.

Other courts have held similarly. *Conn v. City of Reno*, 572 F.3d 1047 (9th Cir. 2009) held that evidence of subsequent remedial steps to prove the failure to adopt and implement policies was admissible. The court allowed evidence of a newly implemented suicide policy to prove that the City of Reno had failed to adopt and implement a suicide policy. *Id*. at 1065; *see also McRorie v. Shimoda*, 795 F.2d 780 (9th Cir. 1986); *Henry v. County of Shasta*, 132 F.3d 512, 519 (9th Cir. 1997) ("We reiterate our rule that post-event evidence is not only admissible for purposes of proving the existence of a municipal defendant's policy or custom, but is highly probative with respect to that inquiry"); *Foley v. City of Lowell, Massachusetts*, 948 F.2d 10, 14 (1st Cir. 1991); *Larez v. City of Los Angeles*, 946 F.2d 630, 647 (9th Cir. 1991).

In *Bordanaro v. McLeod*, 871 F.2d 1151 (1st Cir. 1989), the court rejected an argument that post-event incidents and subsequent remedial measures could not be admitted to prove the existence of a policy that amounted to the failure to train, and emphasized that the "[Supreme Court] has never held that inferences about what

customs or policies existed in a city before an event could not be drawn from subsequent actions. Post-event evidence can shed some light on what policies existed in the city on the date of an alleged deprivation of constitutional right." 871 F.2d at 1166-67; *see also Beck v. City of Pittsburgh*, 89 F.3d 966, 973 (3d Cir. 1996) (recognizing that post-event incident "may have evidentiary value for a jury's consideration whether the City and policymakers had a pattern of tacitly approving the use of excessive force.")

Some cases characterize a finding of *Monell* liability based upon subsequent conduct by the municipality as a ratification of the constitutional violation. *Fuller v. City of Oakland,* 47 F.3d 1522, 1535 (9th Cir.1995) (ratification by a municipality of its employee's unconstitutional acts by failing to meaningfully investigate and punish unconstitutional conduct; jury could have concluded that police chief established "a grossly inadequate investigation-and nevertheless approved the thoroughness of the investigation"); *see also Leach v. Shelby County Sheriff,* 891 F.2d 1241, 1247 (6th Cir.1989) (policy of deliberate indifference is found in the Sheriff's failure to investigate this incident and punish the responsible parties", which "was the same type of 'ratification of the illegal acts' that the Sixth Circuit found to be a sufficient 'official policy' of the county and sheriff in *Marchese v. Lucas,* 758 F.2d 181, 188 (6th Cir.1985)); *Wright v. City of Canton,* 138 F.Supp.2d 955, 966 (N.D. Ohio

2001)("[Plaintiff] can establish his municipal liability claim by showing ... [that] a final municipal policymaker approved an investigation ... that was so inadequate as to constitute a ratification of their alleged use of excessive force.").*Leach v. Shelby County Sheriff,* 891 F.2d 1241, 1247 (6th Cir.1989) (policy of deliberate indifference is found in the Sheriff's failure to investigate this incident and punish the responsible parties", which "was the same type of 'ratification of the illegal acts' that the Sixth Circuit found to be a sufficient 'official policy' of the county and sheriff in *Marchese v. Lucas,* 758 F.2d 181, 188 (6th Cir.1985)); *Wright v. City of Canton,* 138 F.Supp.2d 955, 966 (N.D. Ohio 2001)("[Plaintiff] can establish his municipal liability claim by showing ... [that] a final municipal policymaker approved an investigation ... that was so inadequate as to constitute a ratification of their alleged use of excessive force.").

Because post-incident ratification cannot be the moving force behind an incident that has already occurred, the more logical analysis is to follow the approach of the decisions cited in the preceding paragraphs, which view the municipality's post-incident response as evidence of what the policy was at the time of the incident – as well as evidence of whether the officers in question adhered to that policy. Accordingly, Plaintiff has alleged in his Complaint that "while the department's post-incident determination that the Defendant officers acted pursuant to policy could not have retroactively caused the officers to act the way they did, the internal affairs

memo and the department's determination that no policy was violated nonetheless constitute evidence of what the city's policy was at the time of the incident." (Doc. 1, ¶35).

The Eleventh Circuit has adopted this approach in at least one decision. *Fundiller v. City of Cooper City*, 777 F.2d 1436 (11th Cir. 1985).

> The complaint states that the City of Cooper City has a custom of allowing the use of excessive force. If established, this allegation provides the requisite fault on the part of the City, as a persistent failure to take disciplinary action against officers can give rise to the inference that a municipality has ratified conduct, thereby establishing a "custom" within the meaning of *Monell*. *Batista v. Rodriquez,* 702 F.2d 393, 397 (2d Cir. 1983). In addition, Fundiller's allegation would provide the causal link between the challenged conduct and the City's policy, because Officer Guarnaccia would have been acting in accordance with the policy of allowing or encouraging excessive force. *See Acoff v. Abston,* 762 F.2d 1543, 1548 (11th Cir.1985). Hence we reverse the grant of the motion to dismiss in favor of the City.

777 F.2d at 1443. This Court should do the same. Like the *Cooper City* officer who was not disciplined for conduct that was allegedly unconstitutional, the officers in this case were determined to be acting in accordance with departmental policy when Mr. Pope was struck in the face without justification and blinded in one eye. Accordingly, Plaintiff has stated a plausible claim that the individual Defendants acted pursuant to City policy so as to subject the City to municipal liability under *Monell*.

4.    *Any alleged defect in the pleadings is curable by amendment*

To the extent that greater specificity is required, the Court should grant leave to

amend. The general rule is that a plaintiff will be permitted to amend a dismissed complaint where the dismissal is based upon technical defects. *See Davila v. Delta Air Lines, Inc.*, 326 F. 3d 1183, 1189-90 (11th Cir. 2003). "Even where the court doubts that the pleading defects can be overcome, the federal policy favoring decisions on the merits, rather than on technicalities, counsels in favor of permitting the plaintiff leave to amend … prior to entry of judgment unless the exercise is plainly futile." Baicker-McKee, Federal Civil Rules Handbook (2008), pg. 385 (citing *Ostrazenski v. Seigel*, 177 F. 3d 245, 252-53 (4th Cir. 1999)). Giving the evolving contours of the *Twombly/Iqbal* standard, it would not be futile to give counsel an opportunity to clarify and re-articulate what is being claimed. *See, e.g., Panther Partners Inc. v. Ikanos Communications, Inc.*, 347 Fed. Appx. 617, 622 (2d Cir. 2009) (despite prior opportunity to amend, "the rapidly changing contours of the pleadings standard" command leniency). Should that be the case, Plaintiffs would request discovery on the *Monell* issue before any amendment is due. *See Ford v City of Philadelphia*, 2012 WL 3030161 at *7 (E.D. Pa. 7/24/12); *see also Keahey v. Bethel Twp.,* 2012 WL 478936 at *10 (E.D. Pa. 2/15/2012) (declining to dismiss municipal liability claim because claimant had not yet had opportunity to conduct discovery). Given that no answer has been filed, discovery has not yet begun, and service has not even been perfected as of the time this brief was submitted, there is no prejudice in

allowing discovery to proceed and giving Plaintiff time to amend based upon that discovery.

## CONCLUSION

For the reasons set forth in the foregoing argument of law and citation of authority, Plaintiff Chauncey Pope respectfully requests that Defendant City of Atlanta's motion to dismiss be denied.

Respectfully submitted this 26th day of June, 2013.

/s/ Craig T. Jones
CRAIG T. JONES
Ga. Bar No. 399476
Attorney for Plaintiff

PAGE PERRY, LLC
1040 Crown Pointe Parkway
Suite 1050
Atlanta, GA  30338
(770) 673-0047
cjones@pageperry.com

## <u>CERTIFICATE OF SERVICE</u>

I certify that on this day, I served the foregoing **Plaintiff's Brief in Opposition to Defendant City of Atlanta's Motion to Dismiss** via the Court's electronic filing system upon the following:

Tamara N. Baines, Esq.
City of Atlanta Department of Law
City Hall Tower, Suite 4100
68 Mitchell Street, S.W.
Atlanta, Georgia 30303-3520

This 26th day of June, 2013.

*/s/ Craig T. Jones*
_____
CRAIG T. JONES
Ga. Bar No. 399476
Attorney for Plaintiff

PAGE PERRY, LLC
1040 Crown Pointe Parkway
Suite 1050
Atlanta, GA  30038
(770) 673-0047
cjones@pageperry.com