IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| Chauncey Pope, | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | CIVIL ACTION NO. |
| | : | 1:13-cv-01848-JOF |
| The City of Atlanta, et al., | : | |
| | : | |
| Defendants. | : | |
| | : | |

## ORDER

This matter is before the court on Defendant City of Atlanta's motion to dismiss [3].

### I.   Background

####   A.   Procedural History and Facts Alleged in Complaint

Pursuant to 42 U.S.C. § 1983, Plaintiff, Chauncey Pope, filed suit against Defendants The City of Atlanta, and Officers James Cunningham, Li Wong, Paul Merritt and Brandon Hamberger, alleging Defendants violated his constitutional rights in using excessive force against him during the search of a home.

The court recounts the facts as alleged in the complaint with particular focus on potential liability for the City of Atlanta, the only party who has thus far filed a motion to dismiss. On June 15, 2011, Plaintiff was visiting a house at 551 Sunset Avenue NW in Atlanta, Georgia when Defendants arrived at the home to execute a search warrant. *See* Cmplt., ¶ 12. The search warrant had been issued at the request of the Peachtree City police

as part of an investigation of break-ins in that city. *Id.*, ¶ 13. The purpose of the warrant was to look for stolen property that would link the occupants of the house to the Peachtree City crimes. *Id.*

The police arrived at the house at approximately noon. *Id.*, ¶ 14. Plaintiff and his friend Sean were upstairs on the computer and heard a loud noise downstairs and their friend Antonio saying "don't shoot me, don't shoot me." *Id.* Plaintiff did not hear anyone say "police" or "search warrant" and because they did not know what was happening, Plaintiff and Sean hid in an attic crawl space. *Id.*, ¶ 15.

Defendants Cunningham, Wong, Merritt, and Hamberger were members of the City of Atlanta Police Department SWAT team assisting in the execution of the warrant. *Id.*, ¶ 16. When Defendants realized there were people hiding in the attic crawl space, they put tear gas into the attic in an attempt to flush them out. *Id.*, ¶ 17. When Plaintiff did not emerge, Defendants shouted "come on motherfucker" and "show me your hands." *Id.*, ¶ 18.

One of Defendants, believed to be Defendant Cunningham, found Plaintiff in the crawl space and handcuffed him while he was face down on the floor. *Id.*, ¶ 19. After Plaintiff was handcuffed, this same officer struck Plaintiff in the left eye and put the eye out. *Id.*, ¶ 20. Defendant Cunningham admits that he struck Plaintiff in the face with his fist, but Plaintiff believes that Defendant Cunningham struck him with the butt of his gun or a similarly hard object. *Id.*, ¶ 21. The other Defendants kicked Plaintiff in the back of the

2

head and dragged him across the floor by his dreadlocks and threw him down the stairs. *Id.*, ¶ 23.

An ambulance was called and Plaintiff told the paramedics as well as the doctors at the hospital that he believed an officer had struck him in the eye with a gun. *Id.*, ¶ 26. However, a subsequent internal affairs memo "was written in a way that implies Pope never told medical personnel that he had been struck by an officer's gun." *Id.* The internal affairs memo also concluded that none of the officers on the scene had violated departmental policy. *Id.*, ¶ 27. The memo stated "there is no doubt Mr. Pope sustained a laceration to his eye during the execution of this search warrant, but there is insufficient evidence to determine how the injuries actually occurred." *Id.* The memo stated that Defendant Cunningham struck Plaintiff in the face "due to his gas mask being knocked off by Mr. Pope who was failing to comply with commands." *Id.*, ¶ 28.

The Complaint alleges:

> The conclusion of the internal affairs memo that no policies were violated by any officers was tantamount to an official determination by the Atlanta Police Department that the Defendant officers had acted pursuant to departmental policy.

*Id.*, ¶ 34. It continues:

> While the department's post-incident determination that the Defendant officers acted pursuant to policy could not have retroactively caused the officers to act the way they did, the internal affairs memo and the department's determination that no policy was violated nonetheless constitute evidence of what the city's policy was at the time of the incident.

3

*Id.*, ¶ 35.  The Complaint also alleges:

> The internal affairs memo and the department's official response to this incident is evidence of the City of Atlanta's custom or policy of turning a blind eye to misconduct by its police officers, and particularly the use of excessive force or other Fourth Amendment violations by the department's SWAT team in carrying out so-called high risk assignments such as executing search or arrest warrants, and it can be inferred from the City's response to the incident that such a custom or policy was in existence at the time of the subject incident and that the Defendant officers acted in accordance with that custom or policy.

*Id.*, ¶ 36.  Plaintiff continues:

> It can be inferred from the conduct of the Defendant officers and the department's official response to that conduct that the City of Atlanta condones the use of excessive force and other Fourth Amendment violations by SWAT team members in executing what are expected to be high-risk warrants, and SWAT team members such as the Defendant Officers know that they will not be disciplined if they use excessive force or otherwise violate Fourth Amendment rights.

*Id.*, ¶ 37.

> It can be inferred from the conduct of the Defendant officers and the department's official response to that conduct that the City of Atlanta condones overly aggressive policing – even at the expense of violating constitutional rights – by SWAT team members and other officers involved in high-risk law enforcement activity, with the result being that the officers involved in such activity have come to believe that they have unlimited discretion to act aggressively and abusively toward subjects without any significant risk of disciplinary action, thereby leading officers – including the Defendant officers involved in this case – to believe that the City will stand behind them if they use excessive force, abuse their authority, or otherwise violate constitutional rights and thus causing such officers to violate constitutional rights of citizens, including Chauncey Pope.

*Id.*, ¶ 38.

4

> With respect to direct liability against the City of Atlanta, Plaintiff alleges:
>
> At all times relevant herein, Defendants Cunningham, Wong, Merritt and Hamberger acted pursuant to official custom and policy of Defendant City of Atlanta when they used excessive force against Plaintiff Chauncey Pope and violated his Fourth Amendment rights.

*Id.*, ¶ 39.  He further states:

> At all times relevant herein, Defendant City of Atlanta maintained defective customs and policies under which Defendants Cunningham, Wong, Merritt, Hamberger and other officers received deficient oversight and training in the execution of warrants and use of force that did not adequately address the protection of Fourth Amendment rights in high-risk situations where SWAT officers are involved.

*Id.*, ¶ 40.  Plaintiff contends:

> Said deficiencies in oversight and training were a policy defect that was a contributing cause of the violation of Plaintiff Pope's rights by Defendants Cunningham, Wong, Merritt and Hamberger.

*Id.*, ¶ 41.

Plaintiff raises a Fourth Amendment claim (which the City of Atlanta does seek to dismiss in its motion.).  Plaintiff also contends that the City of Atlanta is liable because:

> The aforementioned defective customs and policies of Defendant City of Atlanta were a moving force behind the unconstitutional conduct of Defendants Cunningham, Wong, Merritt and Hamberger, and accordingly, the city is liable for the violation of Plaintiff Pope's federal constitutional rights by said Defendant officers.

*Id.*, ¶ 49

> Alternatively, Defendant City of Atlanta's failure to provide meaningful oversight and training in an area of law enforcement in which the need for

5

training and oversight was obvious can be construed as deliberate indifference, and because said deliberate indifference to an obvious need was a moving force behind the conduct of the Defendant officers, the city is liable for the violation of Plaintiff Pope's federal constitutional rights by said officers.

*Id.*, ¶ 50.  Plaintiff goes onto state:

Said defective policies and failure to provide oversight and training include the following systemic deficiencies as well as the customs and policies that have already pled in greater detail elsewhere herein:

- Failure to provide effective training and oversight in the proper methods of executing a search warrant and clearing a house being searched without violating the Fourth Amendment rights of the occupants.

- Failure to address the proper use of force in training segments that deal with arrest techniques, defensive tactics, and "hands on" encounters between officers and suspects in which the use of force is apt to occur – and not just in the context of abstract use of force principles taught in the classroom or on the firing range. Failure to view overly aggressive police activity such as the use of gratuitous and unnecessary force, particularly by SWAT team members on what are perceived to be high-risk assignments, as a serious matter for which officers should be subject to serious disciplinary action.

- Failure to diligently and objectively investigate and evaluate the alleged use of excessive force and abuse by officers rather than focusing on justifying and covering up such incidents.

*Id.*, ¶ 51.

Finally, the aforementioned deficiencies in oversight and training, as well as the other customs and policies of Defendant City of Atlanta pled elsewhere herein, caused Plaintiff Pope to be subjected to an unreasonable search and seizure and to the repeated use of excessive force against him by multiple

6

>police officers in violation of his federal constitutional rights, for which the city is liable under 42 U.S.C. § 1983.

*Id.*, ¶ 52. Plaintiff also raises state law torts which are not relevant to the instant motion.

### B. Contentions

The City of Atlanta argues that municipalities cannot be held liable on the basis of respondeat superior, but rather only through injuries caused by an official "policy or custom" of the municipality. The City contends that an isolated incident cannot form the basis of liability under an official "policy or custom." The City further avers that Plaintiff has not alleged sufficient facts to meet the strict standards of causation and culpability that are required in order to hold municipalities liable. The City argues that Plaintiff has not alleged that the City was aware of any problem and made a conscious decision not to take action.

Plaintiff responds that there were specific policy deficiencies that were the moving force behind the violation of his rights and that the City's failure to train its officers in these policies lead to the constitutional injuries he suffered. He also contends that the City's failure to discipline the two officers involved "authorizes an evidentiary inference that the officers were acting pursuant to City policy when they violated Plaintiff's rights." *See* Resp., Docket Entry [4], at 3. In the alternative, Plaintiff seeks leave to amend his complaint to further explain the City's liability.

### II. Discussion

7

Because the City of Atlanta does not argue otherwise, for the purposes of adjudicating this motion to dismiss, the court presumes that Plaintiff has adequately alleged a constitutional violation in his complaint. Plaintiff presents two possible theories of municipal liability: (1) lack of adequate training in executing search warrants and hands-on encounters during the exercise of search warrants and (2) failure to understand the risk of overly-aggressive SWAT activities or to thoroughly investigate allegedly improper use of excessive force.

In *Monell v. Department of Social Services*, 436 U.S. 658 (1978), the Supreme Court held that municipalities (and other local government entities) are "persons" within the meaning of 42 U.S.C. § 1983. The Court, however, consistently has declined to hold municipalities liable under a theory of respondeat superior. *See*, *e.g.*, *Pembaur v. Cincinnati*, 475 U.S. 469, 479 (1986). Rather, a plaintiff must demonstrate a municipal "policy" or "custom" that caused the plaintiff's injury in order to establish a municipality's liability. *See*, *e.g.*, *Canton v. Harris*, 489 U.S. 378, 389 (1989). The plaintiff must also show that "through its deliberate conduct, the municipality was the 'moving force' behind the injury alleged." *Board of Comm'rs v. Brown*, 520 U.S. 397, 404 (1997).

To impose liability on the City of Atlanta for violating a constitutional right under section 1983, Plaintiff must show (1) that his constitutional rights were violated; (2) that the City of Atlanta had a policy or custom that constituted a deliberate indifference to his

8

constitutional right; and (3) that the violation was caused by the policy or custom. *See Canton*, 489 U.S. at 388; *see also Grech v. Clayton County*, 335 F.3d 1326 (11th Cir. 2003) (plaintiff has two methods by which to show policy: "identify either (1) an officially promulgated county policy or (2) an unofficial custom or practice of the county shown through the repeated acts of a final policymaker for the county").

In *Wayne v. Jarvis*, 197 F.3d 1098 (11th Cir. 1999), *overruled on other grounds by Manders v. Lee*, 338 F.3d 1304 (11th Cir. 2003), the court further explicated the standard for establishing municipal liability. "[A] plaintiff seeking to impose liability on a municipality under § 1983 [must] identify a municipal 'policy' or 'custom' that caused the plaintiff's injury." *Id.* at 1105 (quotations and citations omitted). "A custom is a practice that is so settled and permanent that it takes on the force of law." *Id.* "To establish a policy or custom, it is generally necessary to show a persistent and wide-spread practice. Moreover, actual or constructive knowledge of such customs must be attributed to the governing body of the municipality." *Id.*; *see also Depew v. City of St. Marys*, 787 F.3d 196 (11th Cir. 1986) ("Normally, random acts or isolated incidents are insufficient to establish a custom or policy.").[1] "A plaintiff must show that the municipal action was taken with the requisite degree of culpability, i.e., that the municipal action was taken with 'deliberate

---

[1] It is also possible for a plaintiff to establish municipal liability for a single decision by a municipal policymaker, but Plaintiff has not made any such allegations here. *See*, *e.g.*, *Scala v. City of Winter Park*, 116 F.3d 1396, 1399 (11th Cir. 1997).

9

indifference' to its known or obvious consequences." *Davis v. DeKalb County Sch. Dist.*, 233 F.3d 1367, 1375-76 (11th Cir. 2000). There is, however, no heightened pleading requirement with respect to municipal defendants in § 1983 litigation. *See Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*, 507 U.S. 163 (1993).

Assuming that Plaintiff has stated a constitutional violation, Plaintiff has alleged no officially promulgated policy of the City of Atlanta which caused his injuries. Plaintiff attempts to argue that because the internal investigation found no violation, the City has "sanctioned" the officers' conduct equivalent to the establishment of an actual policy. Plaintiff misapprehends that outcome of the investigation.

Although no party has provided the court with the complete investigation report, Plaintiff alleges in his complaint that the report concludes no departmental policy was violated and "there is insufficient evidence to determine how the injuries actually occurred." Contrary to Plaintiff's gloss on the report, the only fair reading of these allegations is that because there could be no determination of how Plaintiff came to be injured, there could be no finding of a violation of departmental policy. Clearly, the investigation report was not such that any undisputed facts were set forth and the department simply disagreed with Plaintiff that the force exercised was excessive. Given such a hypothetical situation, it might be possible to infer that the police department "sanctioned" the activities. But that is not the

10

conclusion reached in the instant investigation based on the details of the report as alleged by Plaintiff, himself.

Plaintiff has also alleged that the City of Atlanta has an unofficial custom of permitting officers to use excessive force in executing search warrants. However, the only factual support he provides for this legal conclusion is based upon the results of the City's internal investigation of Plaintiff's arrest. As the court explained above, however, Plaintiff's allegations put more weight on the investigation than it can bear. Furthermore, it is difficult to establish that a City has a "custom" of anything through one act. *See*, *e.g.*, *McDowell v. Brown*, 392 F.3d 1283, 1290 (11th Cir. 2004) (municipal liability cannot be imposed for "isolated incident" rather "incident must result from demonstrated practice"); *See also McQurter v. City of Atlanta*, 572 F. Supp. 1401, 1420 (N.D. Ga. 1983) (Forrester, J.) (refusing to infer policy of using excessive force based on evidence of failure to discipline on one occasion). Thus, the court concludes that Plaintiff has failed to sufficiently allege municipal liability on the basis of an official custom or policy.

Plaintiff also attempts to premise municipal liability on a failure-to-train theory. Plaintiff alleges the City of Atlanta has failed to train its officers in the execution of search warrants, hands-on encounters, and the thorough investigation of excessive force allegations. The Eleventh Circuit explained in *Gold v. City of Miami*, 151 F.3d 1346 (11th Cir. 1998) that the inadequacy of training could serve as the basis for § 1983 action only where the

11

failure to train amounted to deliberate indifference to the rights of the City's inhabitants. *Id.* at 1350 (quoting *City of Canton*, 489 U.S. at388-89). To "establish a 'deliberate or conscious choice' or such 'deliberate indifference,' a plaintiff must present some evidence that the municipality knew of a need to train and/or supervise in a particular area and the municipality made a deliberate choice not to take action." *Id.* at 1350-51. *Gold* cited to *Wright v. Sheppard*, 919 F.2d 665 (11th Cir. 1990), which held that a sheriff's department was not liable for the acts of its deputy where "no evidence of a history of widespread prior abuse . . . put the sheriff on notice of the need for improved training or supervision." *Id.* at 674. *See also Church v. City of Huntsville*, 30 F.3d 1332 (11th Cir. 1994) (reversing issuance of preliminary injunction because plaintiff not likely to succeed on failure to train claim without proof that City was aware of prior incident where constitutional rights similarly violated); *Popham v. City of Talledega*, 908 F.3d 1561, 1564-65 (11th Cir. 1990) (no liability for failure to train where no pattern of incidents put City on notice of need to train).

The Supreme Court recently revisited the failure-to-train theory. *See Connick v. Thompson*, 131 S. Ct. 1350, 1359 ("A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train."). *Connick* confirms that a "pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train." *Id.* at 1360.

12

"Without notice that a course of training is deficient in a particular respect, decisionmakers can hardly be said to have deliberately chosen a training program that will cause violations of constitutional rights." *Id.*

Plaintiff argues, however, that he can rely on a "single incident" of a violation because there is such an "obvious need" for training in the area of the execution of search warrants and the use of force, that he need not allege any prior incidents. *Gold* addressed this issue and specifically the footnote in *City of Canton* to which Plaintiff refers in his brief. The Court in *City of Canton* did allow for the possibility that a need to train could be "so obvious" that liability could attach without prior violations. *See* 489 U.S. at 390. The example the Court used was the "obvious need" to train officers on the use of deadly force when the city provided officers with weapons and knew they would be pursing fleeing felons. *Id.* at 390 n.10.

In *Board of County Commissioners v. Brown*, 520 U.S. 397 (1997), the Court walked back a bit from *City of Canton* and stated that the footnote was the Court "hypothesizing" a possible "narrow range of circumstances" where a constitutional violation might occur. *Id.* at 409. The Court revisited the situation in *Connick*. *See* 131 S. Ct. at 1361. There, however, the Court found that "[f]ailure to train prosecutors in their *Brady* obligations does not fall within the narrow range of *Canton*'s hypothesized single-incident liability." *Id.* at 1361. The Court continued to state that the:

13

AO 72A
(Rev.8/82)

>obvious need for specific legal training that was present in the *Canton* scenario is absent here. Armed police must sometimes make split-second decisions with life-or-death consequences. There is no reason to assume that police academy applicants are familiar with the constitutional constraints on the use of deadly force. And, in the absence of training, there is no way for novice officers to obtain the legal knowledge they require. Under those circumstances there is an obvious need for some form of training.

*Id.*

With careful consideration of the *City of Canton* and its progeny related to whether there is an "obvious need" for certain training, the court finds that Plaintiff has not alleged sufficient facts to hold the City of Atlanta liable. *City of Canton* explained that only a narrow range of circumstances, such as the use of deadly force, would put a municipality on notice of the "obvious need" to train. The execution of search warrants does not require the use of deadly force. Further, Plaintiff has not alleged that the City was aware of any inadequacies in its training program or that the City of Atlanta made a "deliberate choice" not to take any action in response to any perceived "obvious need" for training. *See Gold*, 151 F.3d at 1450.

Finally, Plaintiff has not alleged anything to show that any alleged failure to thoroughly investigate a citizen's complaint of excessive force was the "moving force" behind Plaintiff's alleged constitutional injuries. As such, any failure to train officers in proper investigation of complaints cannot be a source of liability for the City of Atlanta.[2]

---

[2]Plaintiff also argues that because the evidence necessary to prove his municipal liability claim is within the custody and control of the City, he should be permitted to engage

### III.  Conclusion

The court GRANTS Defendant City of Atlanta's motion to dismiss [3]

**IT IS SO ORDERED** this 12th day of August, 2013.

                           S/   J. Owen Forrester
                           J. OWEN FORRESTER
                           SENIOR UNITED STATES DISTRICT JUDGE

---

in discovery to ascertain facts to support his claim.  This is not sufficient to ward off a motion to dismiss.  *See*, *e.g.*, *Chudasama v. Mazda Motor Corp.*, 123 F.3d 1353, 1367 (11th Cir. 1997) (court should rule on motion to dismiss for failure to state a claim before discovery begins and quoting with approval "Discovery should follow the filing of a well-pleaded complaint.  It is not a device to enable a plaintiff to make a case when his complaint has failed to state a claim.").

15